**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**PATSY FOWLKES,**                                              **PLAINTIFF,**

**VS.**                            **CIVIL ACTION NO. 1:05CV14-P-D**

**SCHERING-PLOUGH CORPORATION
VOLUNTARY EARLY RETIREMENT
PROGRAM,**                                           **DEFENDANT.**

**MEMORANDUM OPINION**

These matters come before the court upon Defendant's Motion for Summary Judgment [7-1] and Plaintiff's Motion for Summary Judgment [20-1]. Upon due consideration of the motions and the responses filed thereto, the court is prepared to rule. For the reasons discussed below, the court concludes that the plaintiff's motion for summary judgment should be denied and the defendant's motion for summary judgment should be granted.

**I. FACTUAL BACKGROUND**

On November 17, 2002, Patsy Fowlkes, then an employee of Schering-Plough, notified the Vice President of Sales that she intended to retire. The Company requested that she continue working and she delayed her retirement until June 11, 2003. At the time Fowlkes left Schering-Plough, she had 19 years of service. She was 49 when she left and turned 50 in the year of 2003.

On August 21, 2003, about six weeks after Fowlkes left Schering-Plough, a memo was distributed to "all US-based Schering-Plough People" notifying employees of a new Voluntary Early Retirement Program. Fowlkes received a copy of this memo. The August 21, 2003 Memo read in pertinent part:

"[W]e will be offering a Voluntary Early Retirement Program to U.S.-based employees

who are 50 years or older during 2003 with at least 5 years of vesting service. There are some limited exceptions to eligibility for this program including customer contact employees ....

\*\*\*

"In essence, this new program allows eligible employees to retire earlier without sacrificing the additional pension benefits they would have accrued had they continued working additional years.

\*\*\*

"While the terms of the program will be detailed in future communications, the basic idea is that, for those choosing to participate, five years of benefit service will be added to the length of their service (up to a maximum of 45 years) and five years will be added to their age (up to the normal retirement age of 65) for purposes of calculating pension benefits under the Company's retirement plan. For those who elect to participate, their last day worked will be December 31, 2003, with retirement effective January 1, 2004. This program will also be available to those who have previously retired with a retirement date earlier in 2003.

The relevant terms of the Voluntary Early Retirement Program ("VERP") itself are:

<u>Introduction</u>
\*\*\*

"The VERP is part of the Schering-Plough Corporation Group Benefits Plan. To the extent that the terms of the VERP are inconsistent with the terms of the Group Benefits Plan document, the terms of this VERP document shall govern the VERP. The legal rights and obligations of any person having an interest in the VERP are determined solely by the provisions of the VERP and the Group Benefits Plan.

\*\*\*

<u>Eligibility</u>

<u>A. When you are eligible</u>

You are eligible for the VERP if you meet each of the following criteria:

(I) You retire on or after January 1, 2003 and before January 2, 2004 ....

(ii) Immediately prior to your retirement, you were ... actively employed ...

(iii) Immediately prior to your retirement, you were a U.S. ... employee ... participating in the Company's U.S. Retirement Plan.

(iv) You are age 50 or older during 2003;

(v) As of December 31, 2003, you have been credited with at least five years of vesting service under the Retirement Plan;

(vi) You voluntarily elect to participate in the VERP;

(vii) You sign a release satisfactory to the Company;

(viii) You sign a noncompete agreement, if one is required by the Company; and

(ix) You are not excluded from participation under section B immediately below.

B. Exclusions from Participation in the VERP

You will be excluded from participating in the VERP if you are:

\*\*\*

(iv) An employee who is deemed to be customer facing by the Senior Vice President of Global Human Resources;

\*\*\*

The Schering-Plough Corporation Retirement Plan ("Retirement Plan") was amended effective January 1, 2004 to allow eligible employees to retire early under the terms of the VERP. The amendment to the Retirement Plan read in pertinent part:

**Amendment 2003-2 to the Schering-Plough Corporation Retirement Plan**

... the Plan is hereby amended, effective January 1, 2004, as follows:

1. A new Section 4.10 is hereby added immediately after Section 4.09 of the Plan, as amended, as follows:

"**4.10 Voluntary Early Retirement Program**

(a) Any member who meets all of the eligibility criteria set forth in subsection (b) of this Section 4.10 shall be entitled to the benefit enhancements set forth in subsections (c) and/or (d) of this Section 4.10.

(b) A Member shall be eligible for the Voluntary Early Retirement Program if

> he or she (I) is a U.S. and Puerto Rico based employee and U.S. expatriates participating in the U.S. Retirement Plan; (ii) retires on or after January 1, 2003 and before January 2, 2004; (iii) is age 50 or older during 2003; (iv) has been credited with at least five years of vesting service under the Plan; (v) is not part of a classification of employees determined to be excluded from the Voluntary Early Retirement Program by the Senior Vice President Global Human Resources of Schering-Plough Corporation; (vi) voluntarily elects to participate in the Voluntary Early Retirement Program; (vii) sign a release satisfactory to Schering-Plough Corporation. For purposes of this Section 4.10, a Member meeting these criteria shall be known as a VERP Participant.
>
> (c) Any VERP Participant shall be credited with (I) five additional years of Eligibility Service and five additional years of age; provided that in no event shall the additional years cause such VERP Participant's years of Eligibility to exceed 45 or cause his age to exceed 65.

Following a recommendation from management, the Schering-Plough Corporation Employee Benefits Committee ("Committee") on November 21, 2003 (some five months after Fowlkes had left the company but just before she applied for benefits) approved a formal administrative interpretation of the VERP which stated in pertinent part:

> "[a]n individual who terminated service under the Company during 2003 will not be eligible to participate in the VERP unless such individual was eligible for either a normal or early retirement under the Schering-Plough Corporation Retirement Plan (the "Retirement Plan"), without the benefit of the increased years of age or service provided to VERP-eligible Retirement Plan participants by the VERP benefit enhancements...."

The Retirement Plan was amended, effective January 1, 2004 to incorporate the provisions of the VERP.

Although Fowlkes has already left her company when the VERP was set in place, she believed she met all of the criteria and fell under none of the exclusions. Therefore, she requested to be included in the VERP and to receive all benefit enhancements on December 1, 2003. On January 22, 2004, the Committee denied the plaintiff's claim on the grounds that an individual who

4

terminated service with the Company during the year 2003 will not be eligible to participate in the VERP unless she was eligible for early or normal retirement under the Retirement Plan. At the time of the plaintiff's separation in June 2003, urged the Committee, she was not eligible for retirement under the Plan because she was not yet 55 and the Retirement Plan has always provided that an employee is eligible for early retirement at 55 and normal retirement at 65. The retirement ages were not amended even with the addition of the VERP.

Fowlkes appealed the Committee's determination on March 22, 2004. By letter of July 16, 2004, the plan administrator denied her appeal. The Committee based its decision on the following factors: (1) since P was not yet 55 at the time of her resignation in June 2003, she was not eligible for either early retirement [55] or normal retirement [65] benefits under the Retirement Plan, and thus her voluntary termination in June 2003 was not considered "retirement" for purposes of the Company's benefit plans; (2) the express language of Subsection A(I) of the Eligibility Section of the VERP which states that to be eligible to participate in the VERP, a person must "retire" on or after January 1, 2003 and before January 1, 2004; (3) the reference to the retirement requirement in Subsections A(ii) and (iii) of the Eligibility Section of the VERP; and (4) the formal interpretation issued by the Committee on November 21, 2003.

After having complied with all of the appeal procedures, Fowlkes filed the instant action on January 18, 2005. The plaintiff argues that pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, the defendant, Schering-Plough Voluntary Early Retirement Program, arbitrarily and capriciously denied the plaintiff benefits under the VERP in clear contradiction of the express terms of the VERP.

The defendant filed a motion for summary judgment, arguing that its decision was legally

5

correct and not an abuse of discretion. The denial of benefits decision was based on the August 21, 2003 Memo, the provisions of the VERP, the amendment to the Retirement Plan itself, and the November 21, 2003 formal interpretation of the VERP by the Benefits Committee. The defendant urges that the plaintiff never technically "retired" as that term has always been defined by the Retirement Plan itself – *i.e.*, at 55 for early retirement or 65 for normal retirement – because the plaintiff was only 50 when she voluntarily resigned from the company. The defendant points out that it is undisputed that the plaintiff did not detrimentally rely on the provisions of the Voluntary Early Retirement Program given that said program was not put in place until six weeks after Fowlkes left the company.

The defendant maintains that despite the plaintiff's interpretation of the provisions, the VERP's very purpose was to encourage active employees to retire early, not those who had already left. Thus, the defendant argues, none of the VERP provisions regarding adding 5 years to the age of an employee seeking eligibility for VERP benefits apply to Fowlkes. In other words, the defendant insists that Fowlkes never actually "retired" but rather voluntarily left the company before she was eligible for early retirement (at 55) and the 5-year provision did not apply to the plaintiff because she had already left the company before the VERP was even activated.

The defendant argues alternatively that even had Fowlkes been eligible under the eligibility requirements of the VERP, she would have been excluded under Subsection B(iv) and (v) of the VERP because she was deemed a "customer facing" employee given that she had been a Regional Sales Director.

The plaintiff filed a cross-motion for summary judgment, arguing that the interpretations of the VERP provisions were done incorrectly, arbitrarily, and capriciously. The plaintiff also argues

6

that the defendant is estopped from asserting the "customer facing" exclusion because it never mentioned this during the appeals process. Even if the court allowed it, argues the plaintiff, when the plaintiff left the company, she was not acting as a Regional Sales Director, but rather was working in Compliance which is not a customer facing position.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5 Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*., at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*., at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

## B. Review Standards

A district court's review of a plan fiduciary/administrator's benefits determination differs

depending on whether the claimant's objection is grounded on a factual determination or on an interpretation of the plan's terms. In every instance, factual determinations are to be reviewed under an abuse of discretion standard and only upon the administrative record. Plan interpretations, on the other hand, are reviewed differently depending on whether the plan vests the fiduciary/administrator with a discretionary function in that regard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 956-57 (1988). In the instant case, the VERP plan expressly provides that the Benefit Committee is the:

> sole judge of the application and interpretation of the VERP, and will have the discretionary authority to construe the provisions of the VERP, to resolve disputed issues of fact, and to make determinations regarding eligibility for benefits other than determinations under "Eligibility" that are reserved to the Senior Vice President, Global Human Resources of the Company (or its successor organization) and the ability to review claims for VERP benefits under the Retirement Plan or for the retiree medical coverage as discussed in the Claims Procedure Section of this VERP plan document. The decision of the Plan Administrator in all matters relating to the VERP that are within the scope of its authority (including, but not limited to, eligibility for benefits, plan interpretation, and disputed issues of fact) will be final and binding on all parties.

Accordingly, an abuse of discretion standard also applies to this court's review of any of the defendants' acts which might reasonably be construed as plan interpretation.[1]

It is undisputed that the primary issue at hand is the plan administrator's interpretation of the VERP provisions rather than a factual dispute.

Where a benefits decision turns on plan interpretation, a two-tier analysis is involved. First, the trial court must determine whether the administrator's plan interpretation is "legally correct." Factors to consider in evaluating the legal accuracy of the administrator's plan interpretation include:

---

[1] Had the plan not included a grant of discretion, plan interpretation would be reviewed *de novo*.

9

(1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 638 (5th Cir. 1992).

If the court determines that the administrator's interpretation of the plan is legally correct, the analysis need proceed no further.

However, should the court conclude otherwise, it becomes necessary for the court to inquire whether the administrator abused its discretion in reaching the benefits determination at issue. The abuse of discretion inquiry turns on the following considerations: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of lack of good faith. *Id*.

1. Legal correctness

The benefits decision in the present case turns primarily upon the interpretation of the word "retire." As set out in detail above, three of the main eligibility criteria for the VERP is that an active employee "retire." It is undisputed that the Retirement Plan has always provided that to technically retire, one must be 55 for "early retirement" and 65 for "normal retirement." Even though the plaintiff's superiors referred to her leaving the company at 49 as "retirement" in terms of announcements and her "retirement party," it is undisputed that the plaintiff was not 55 when she left the company in June 2003. It is undisputed that when the plaintiff voluntarily resigned in June 2003, she did not think she was "retiring" as far as the Retirement Plan's requirement of 55 for early retirement benefits was concerned. It is also undisputed that the plaintiff did not rely to her detriment

on being eligible for the VERP when she left; indeed, the VERP was not put in place until well after she left.

In other words, though the plaintiff had no expectation of early retirement or normal retirement benefits when she left in June 2003, she came to believe she would be entitled to them after she received information regarding the VERP sent after she left her company. After reading the eligibility criteria, she believed she would be eligible by assuming she had "retired" when reading the eligibility criteria or, if not, that she would be deemed technically "retired" after the 5 years were added to her age pursuant to the terms of the August 21, 2003 Memo and the amended Retirement Plan, Section 4.10(c). [2]

The defendant points out, correctly, that the August 21, 2003 Memo, the VERP documents, and the amended Retirement Plan's Section 4.10 clearly presume that the employee in question be an active employee at the time they wish to be credited with an additional 5 years to her age This is true without the November 21, 2003 formal interpretation by the Committee which made that point clearer. Given that the entire point of the VERP was to induce active employees to retire early, it is unreasonable to assume that the 5 years would be added to the age of an employee that had already left the company and that therefore could no longer be considered an active employee.

Considering the aforementioned analysis in addition to the factors (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations

---

[2] "(c) Any VERP Participant shall be credited with (I) five additional years of Eligibility Service and five additional years of age; provided that in no event shall the additional years cause such VERP Participant's years of Eligibility to exceed 45 or cause his age to exceed 65." Amended Retirement Plan, Section 4.10(c).

of the plan, the court concludes that the plan administrator's interpretation of the relevant VERP provisions with regard to the plaintiff was legally correct.

2. Abuse of Discretion

Even if the interpretation were not deemed legally correct, the plaintiff has not created a genuine issue of material fact regarding whether the plan administrator's decision to deny VERP benefits was an abuse of discretion. As stated above, the abuse of discretion inquiry turns on the following considerations: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of lack of good faith. In the instant case, only the first and third considerations are relevant.

After considering that "retire" according to Schering-Plough's Retirement Plan has at all relevant times meant 55 or 65, that said definition of "retire" was not amended by the VERP provisions, and that the entire purpose of the VERP was to encourage active employees who had not yet left the company to retire early if they were at least 50 (thereby allowing adding 5 years to the active employee's age), the plan administrator's interpretation of the VERP provisions were internally consistent.

With regard to the factual background of the determination and any inferences of lack of good faith, the plaintiff has provided no evidence that there were any material factual inaccuracies or that there was a lack of good faith on the part of the defendant.

Simply stated, it appears that the plaintiff voluntarily left her company well before she was eligible for early or normal retirement and that after the fact, she was sent information about the VERP and misread the provisions by assuming the eligibility criteria requiring retirement applied

to her resignation and/or by assuming that she would be credited with the 5 additional years without understanding that she had to be an active employee to receive that benefit. This is not a case in which an employee was induced to retire on the expectation that she would receive full retirement benefits under a new early retirement plan only to be improperly denied those promised benefits after she resigned. Rather, this is a case in which the plaintiff left her company on her own initiative and hoped to benefit from a plan implemented post-resignation through a hopeful interpretation of the new plan's provisions. Had she been an active employee when the new plan became effective, or had she technically "retired" at 55 between January 1, 2003 and January 2, 2004, she would have been eligible for the VERP.[3] However, she was neither an active employee nor had she technically "retired."

### III. CONCLUSION

For the reasons discussed above, the court concludes that the defendant's motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied. Therefore, the plaintiff's claims should be dismissed with prejudice. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of November 28, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Because the court concludes that the denial of benefits was legally correct and not an abuse of discretion, the court declines to analyze whether the plaintiff fell under the VERP's exclusion of "customer facing" employees other than to say that it appears that the defendant has not disputed that she was technically not in sales when she resigned but rather in compliance which appears not to be a "customer facing" position.